IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>**[36] XAVIER CASTRO-VEGA,**<br>a/k/a "Raton",<br>Defendant. | CRIMINAL NO. 15-462(JAF) |



**PLEA AGREEMENT**
**(Pursuant to Fed. R. Crim. P. 11(c)(1)(B))**

**TO THE HONORABLE COURT:**

**COMES NOW**, the United States of America, by and through its attorneys for the District of Puerto Rico: Rosa Emilia Rodriguez-Velez, United States Attorney, Jose A. Ruiz-Santiago, Assistant United States Attorney, Chief, Criminal Division, Mariana E. Bauza-Almonte, Assistant United States Attorney, Unit Chief Narcotics Unit, Alberto R. Lopez-Rocafort, Assistant United States Attorney, and Victor O. Acevedo-Hernandez, Assistant United States Attorney, along with Defendant, **[36] XAVIER CASTRO-VEGA**, and his counsel, Laura Maldonado-Rodriguez, and, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), state to this Honorable Court that they have reached a Plea Agreement, the terms and conditions of which are as follows:

1.   **CHARGES TO WHICH DEFENDANT PLEADS GUILTY**

Defendant agrees to plead guilty to Count One of the Indictment, that is, to conspiring to violate 18 U.S.C. § 1962(c), namely, that beginning on a date unknown, but no later than in or about the year 2007, and continuing up to and until the year 2015, in the District of Puerto Rico and within the jurisdiction of this Court, the defendant, **[36] XAVIER CASTRO-VEGA**, and other persons, being persons employed by and associated with the enterprise, La Rompe ONU, which

engaged in, and the activities of which affected, interstate, and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly, and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity consisting of multiple acts involving: (1) drug trafficking, including cocaine base (commonly referred to as "crack"), cocaine, heroin, marijuana, oxycodone (commonly known as Percocet), and alprazolam (commonly known as Xanax), in violation of the laws of the United States, that being, 21 U.S.C. §§ 841 and 846; (2) interference with commerce by robbery, in violation of the laws of the United States, that being, 18 U.S.C. § 1951; (3) robbery, chargeable under Articles 35 (attempt), 198 (general robbery statute) and 249 (conspiracy) of the 2004 Puerto Rico Penal Code and Articles 35 (attempt), 189 (general robbery statute) and 244 (conspiracy) of the 2012 Puerto Rico Penal Code; and (4) murder, chargeable under Articles 35 (attempt), 105 (general murder statute), 106 (first degree and second degree murder), and 249 (conspiracy) of the 2004 Puerto Rico Penal Code and Articles 35 (attempt), 92 (general murder statute), 93 (first degree and second degree murder) and 244 (conspiracy) of the 2012 Puerto Rico Penal Code. All in violation of 18 U.S.C. § 1962(d).

2.   **MAXIMUM PENALTIES**

Defendant understands that the penalty for the charge to which Defendant agrees to plead guilty is as follows: a term of imprisonment of not more than life; a fine of not more than two hundred and fifty thousand dollars ($250,000.00); and a term of supervised release of not more than five (5) years. The Court must impose a mandatory penalty assessment of one hundred dollars ($100.00).

3. **SENTENCING GUIDELINES APPLICABILITY**

Defendant understands that the sentence will be left entirely to the sound discretion of the Court in accordance with 18 U.S.C. §§ 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which have been rendered advisory by the United States Supreme Court decision in the consolidated cases <u>United States v. Booker and United States v. Fanfan</u>, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished and that the imposition of his sentence may not be suspended.

4. **SPECIAL MONETARY ASSESSMENT**

Defendant agrees to pay a special monetary assessment of one hundred dollars ($100.00), per count of conviction, to be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013(a)(2)(A).

5. **FINES AND RESTITUTION**

Defendant is aware that the Court may, pursuant to U.S.S.G. § 5E1.2, order him to pay a fine sufficient to reimburse the Government for the costs of any imprisonment, probation, or supervised release ordered. The Court may also impose restitution. The United States will make no recommendations as to the imposition of fines.



6. **RULE 11(c)(1)(B) WARNINGS**

Defendant is aware that his sentence is within the sound discretion of the sentencing judge and of the advisory nature of the Guidelines, including the <u>Guidelines Policy Statements</u>, <u>Application</u>, and <u>Background Notes</u>. Further, Defendant understands and acknowledges that the Court is not a party to this Plea and Forfeiture Agreement and thus, is not bound by this agreement

3

or the sentencing calculations and recommendations contained. Defendant specifically acknowledges that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which Defendant is pleading guilty. Defendant is aware that the Court may accept or reject the Plea and Forfeiture Agreement, or may defer its decision whether to accept or reject the Plea and Forfeiture Agreement until it has considered the pre-sentence investigation report. See Fed. R. Crim. P. 11(c)(3)(A). Should the Court impose a sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of the obligations under this Plea and Forfeiture Agreement. See Fed. R. Crim. P. 11(c)(3)(B).

7. APPLICABILITY OF UNITED STATES SENTENCING GUIDELINES

Defendant is aware that pursuant to the decisions issued by the Supreme Court of the United States in the cases of United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005), the Guidelines are no longer mandatory and must be considered effectively advisory. Therefore, after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit the following advisory Guideline calculations:

| Sentencing Guidelines Calculations Table | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Base Offense | U.S.S.G. §§ 2E1.1(a)(2), 2A1.1(a), 2D1.1(d)(1), 3D1.2(c), and 3D1.3(a) | | | | | | | 43 |
| Acceptance | Acceptance of Responsibility, U.S.S.G. § 3E1.1 | | | | | | | -3 |
| Sentencing Ranges | TOL | CHC I | CHC II | CHC III | CHC IV | CHC V | CHC VI | Total Offense Level |
| | 40 | 292-365 | 324-405 | 360-life | 360-life | 360-life | 360-life | 40 |

8. NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY

The parties do not stipulate as to any Criminal History Category for Defendant.

4

### 9. SENTENCE RECOMMENDATION

As to Count One, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree that the defendant may recommend a sentence of one hundred and forty-six (146) months of imprisonment, while the United States reserves the right to recommend a sentence up to two hundred and eighty-two (182) months, regardless of defendant's criminal history category, <u>to be served consecutive</u> to Defendant's current sentence of one hundred and thirty (130) months for defendant's convictions in criminal case numbers 11-495 (CCC) and 13-694 (JAF), <u>for a total sentence of not less than two hundred and seventy-six (276) months of imprisonment</u>. The parties further agree that defendant's federal convictions in criminal case numbers 11-495 (CCC) and 13-694 (JAF) should be considered relevant conduct of the instant offense.1 The parties agree that the stipulation to serve the sentence for defendant's prior conviction in criminal case number 13-694 (JAF) consecutively is only applicable to the imposition of a non-guideline sentence as recommended in this paragraph.

The parties recognize that the abovementioned recommendation constitutes a variance sentence of the stipulated guideline range.

### 10. WAIVER OF APPEAL

Defendant knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that Defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement.

---

1 In criminal case number 13-694 (JAF), defendant was sentenced to a total term of imprisonment of forty-six (46) months, to be served consecutive to the sentence imposed in in criminal case number 11-495 (CCC), in which defendant was sentenced to a total term of imprisonment of eighty-four (84) months, which yielded a total sentence of one hundred and thirty (130) months.

5

11. **NO FURTHER ADJUSTMENTS OR DEPARTURES**

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variance sentence under 18 U.S.C. § 3553 shall be sought by either party. The parties agree that any request by either party for an adjustment or departure will be considered a material breach of this Plea Agreement, in which case, the Plea Agreement will be annulled and Defendant's rights as enumerated in paragraph thirteen (13) will be reinstated.

12. **SATISFACTION WITH COUNSEL**

Defendant represents to the Court that he is satisfied with counsel, Laura Maldonado-Rodriguez, and asserts that counsel has rendered effective legal assistance.

13. **RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA**

Defendant understands that by entering into this Plea Agreement he surrenders certain rights as provided in this agreement. Defendant understands that the rights of criminal Defendants include the following:

- a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

- b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

   c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

   d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

   e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

14. **STIPULATION OF FACTS**

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect and, had the matter proceeded to trial, that the United States would have proven those facts beyond a reasonable doubt.

15. **LIMITATIONS OF PLEA AGREEMENT**

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

16. **ENTIRETY OF PLEA AGREEMENT**

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and deny the existence of any other term and conditions not stated herein.

7

17.     **AMENDMENTS TO PLEA AGREEMENT**

No other promises, terms or conditions will be entered unless in writing and signed by all parties.

18.     **VOLUNTARINESS OF GUILTY PLEA**

Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

**(SPACE INTENTIONALLY LEFT IN BLANK)(CONTINUED ON NEXT PAGE)**

19. **DISMISSAL OF OTHER COUNTS**

At sentencing, the United States will request the dismissal of all remaining counts in the Indictment.

**ROSA EMILIA RODRÍGUEZ-VÉLEZ**
United States Attorney

_____
Jose A. Ruiz-Santiago
Assistant U.S. Attorney
Chief, Criminal Division
Dated: 12/3/15

_____
Mariana E. Bauza-Almonte
Assistant U.S. Attorney
Chief, Narcotics Unit
Dated: 12/1/15

_____
Alberto R. Lopez-Rocafort
Assistant U.S. Attorney
Dated: 11/25/15

_____
Victor O. Acevedo-Hernandez
Assistant U.S. Attorney
Dated: 12/3/15

_____
Laura Maldonado-Rodriguez
Counsel for Defendant
Dated: 12/3/2015

_____
Xavier Castro-Vega
Defendant
Dated: 12/3/2015

9

## UNDERSTANDING OF RIGHTS

I have consulted with my counsel and fully understand all of my rights with respect to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>Sentencing Guidelines</u>, <u>Policy Statements</u>, <u>Application</u>, and <u>Background Notes</u> which may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement it to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 12/3/2015

Xavier Castro-Vega
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending Scharges. Further, I have reviewed the provisions of the <u>Sentencing Guidelines</u>, <u>Policy Statements</u>, <u>Application</u>, and <u>Background Notes</u>, and I have fully explained to Defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 12/3/2015

Laura Maldonado-Rodriguez
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the United States of America submits the following statement setting forth the United States' version of the facts leading to Defendant's acceptance of criminal responsibility for Defendant's violation of 18 U.S.C. § 1962(d). Had this matter proceeded to trial, the United States would have presented evidence through the testimony of cooperating witnesses, victims, and experts, as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt the following:

Beginning on a date unknown, but no later than in or about the year 2007, and continuing up to and until the year 2015, in Puerto Rico, there is an organization, an association-in-fact, known as La Rompe ONU, which is composed of a union of several drug trafficking organizations that operate within different Public Housing Projects in the Puerto Rico metropolitan area. Members of La Rompe ONU would sell crack, cocaine, heroin, and marijuana in the drug points of La Rompe ONU controlled Public Housing Projects. Moreover, La Rompe ONU members used violence, including murder to increase their control over the drug trade in the Puerto Rico metropolitan area and maintain control of their drug points.

La Rompe ONU's activities affected interstate or foreign commerce. La Rompe ONU members used firearms, which traveled in interstate or foreign commerce. Additionally, the narcotics distributed by La Rompe ONU members were not produced in whole sale quantities within Puerto Rico.

As a member of La Rompe ONU, Defendant knowingly and intentionally conspired with diverse other persons to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly

and indirectly, in the conduct of the affairs of La Rompe ONU through a pattern of racketeering activity consisting of multiple acts involving:

1. Drug trafficking, including cocaine base (commonly referred to as "crack"), cocaine, heroin, marijuana, oxycodone (commonly known as Percocet), and alprazolam (commonly known as Xanax), in violation of the laws of the United States, that being, 21 U.S.C. §§ 841 and 846;

2. Interference With Commerce by Robbery, in violation of the laws of the United States, that being, 18 U.S.C. § 1951;

3. Robbery, chargeable under Articles 35 (attempt), 198 (general robbery statute) and 249 (conspiracy) of the 2004 Puerto Rico Penal Code and Articles 35 (attempt), 189 (general robbery statute) and 244 (conspiracy) of the 2012 Puerto Rico Penal Code; and

4. Murder, chargeable under Articles 35 (attempt), 105 (general murder statute), 106 (first degree and second degree murder), and 249 (conspiracy) of the 2004 Puerto Rico Penal Code and Articles 35 (attempt), 92 (general murder statute), 93 (first degree and second degree murder) and 244 (conspiracy) of the 2012 Puerto Rico Penal Code.

One of the racketeering acts Defendant agreed to participate in was a conspiracy to possess with intent to distribute two hundred and eighty (280) grams or more of a mixture or substance containing cocaine base ("crack"), a Schedule II Narcotic Drug Controlled Substance, five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, one (1) kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, and one hundred (100) kilograms or more of a mixture or substance containing a detectable amount of

12

marijuana, a Schedule I Controlled Substance, within one thousand (1,000) feet of a real property comprising housing facilities owned by a public housing authority, to wit: Jardines del Paraiso Public Housing Project, Villa Andalucia Public Housing Project, Alturas de Cupey Public Housing Project, Jardines de Cupey Public Housing Project, Brisas de Cupey Public Housing Project, Los Claveles Public Housing Project, Nuestra Señora de Covadonga Public Housing Project, Los Lirios Public Housing Project, Jardines de Monte Hatillo Public Housing Project, Jardines de Campo Rico Public Housing Project, Jardines de Berwind Public Housing Project, San Martin Public Housing Project, Monte Park Public Housing Project, El Polvorin Ward, Villa Lomas Verdes Public Housing Project, Mango Sector and other areas nearby, within the Municipalities of San Juan, Trujillo Alto and Carolina, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860. In furtherance of this conspiracy, Defendant was an enforcer and a drug point owner for La Rompe ONU.

In addition to drug trafficking, Defendant participated in murders in furtherance of La Rompe ONU. The following are murders in which Defendant participated in furtherance of the enterprise.

On June 25, 2011, a member of La Rompe ONU was at the house of another gang member when he received a call from a third member of La Rompe ONU, who was incarcerated, stating that another member of the organization, had seen HERVIN VALCARCEL-MARTINEZ and some of his associates washing cars in front of a business, where they sell drugs, food and drinks. The drug point at that business previously belonged to a member of La Rompe ONU gang. VALCARCEL-MARTINEZ had taken the drug point from a member of La Rompe ONU. Later that day, one of the leaders of La Rompe ONU also called the gang member and told him

13

that the fellow gang member that was calling him from prison was asking him to kill these individuals. The abovementioned leader of La Rompe ONU ordered his fellow gang members to go and kill VALCARCEL-MARTINEZ and his associates. Defendant, **[36] XAVIER CASTRO-VEGA,** and other gang members of La Rompe ONU drove to the area where the individuals had been seen. During the car ride, another gang member of La Rompe ONU confirmed that the individuals were still at the location. When they got to the location, they saw the individuals washing the cars. They all exited the vehicle and opened fire against the individuals. Together they killed four individuals including VALCARCEL-MARTINEZ.

On or about July 20, 2011, the main leader of La Rompe ONU ordered the murder of SANTOS DIAZ-CAMACHO, a/k/a "Joel Bazooka", a member of La Rompe ONU, because he had allied himself with a rival drug trafficking organization. On or about that date, another leader of La Rompe ONU informed other gang members that SANTOS DIAZ-CAMACHO, a/k/a "Joel Bazooka" was in a vehicle and that another vehicle was escorting him. With that information, Defendant, **[36] XAVIER CASTRO-VEGA,** along with other members of La Rompe ONU, and others known and unknown, shot and killed SANTOS DIAZ-CAMACHO, a/k/a "Joel Bazooka", JUAN ROSARIO-MERCADO, a/k/a "Toñito", and KEVIN SOTO-ROMAN, a/k/a "El Gordo".

At trial, the United States would have proven beyond a reasonable doubt that defendant **[36] XAVIER CASTRO-VEGA,** is guilty as charged in COUNT ONE of the Indictment by presenting physical and documentary evidence, photographs, audio and video recordings, testimony of a forensic chemist as an expert witness, cooperating witnesses, as well as the testimony of law enforcement agents among others.

Full discovery has been provided to the defendant.

_____
Alberto R. Lopez-Rocafort
Assistant United States Attorney
Dated: 11/25/15

_____
Laura Maldonado-Rodriguez
Counsel for Defendant
Dated: 12/3/2015

_____
Xavier Castro-Vega
Defendant
Dated: 12/3/2015

15